IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH M. GULLION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. H-06-1015 |
| v. | § | |
| | § | |
| JLG SERVICEPLUS, INC., JLG | § | |
| INDUSTRIES, INC., WILLIAM M. | § | |
| LASKY, and CRAIG PAYLOR, | § | |
| | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Plaintiff's Motion to Remand (Document No. 8); Defendant JLG Industries, Inc.'s Motion to Dismiss Or, In the Alternative, Motion to Transfer Venue (Document No. 13); Defendants Lasky's and Paylor's Motion to Dismiss Or, In the Alternative, Motion to Transfer Venue (Document No. 14); Defendant JLG ServicePlus, Inc.'s Motion to Dismiss (Document No. 32); and Plaintiff's Motion for Leave to Amend (Document No. 35). After having carefully considered the parties' submissions, the Court concludes as follows.

I.  Background

The dispute arises out of an agreement to implement Plaintiff's business model, which provided for the creation and operation of a service organization to support manufacturers and

retailers of heavy equipment.  Plaintiff, a citizen of Texas, alleges that in 2003, Defendant JLG Industries, Inc. ("JLG"), through its officers, Defendants William Lasky ("Lasky") and Craig Paylor ("Paylor"), offered to implement Plaintiff's business model through the creation of a subsidiary, Defendant JLG ServicePlus, Inc. ("JLG ServicePlus").  Plaintiff alleges that he obtained a 13% ownership interest in JLG ServicePlus.  Plaintiff agreed to serve as President of JLG ServicePlus, and in March, 2004, signed an Employment Agreement (the "Agreement") with JLG in which JLG ServicePlus was identified as his employer.  The Agreement contained a non-compete clause which, if enforced, would prevent Plaintiff from directly or indirectly assisting any activity anywhere in the world that is competitive with JLG or JLG ServicePlus.  In July, 2004, JLG ServicePlus opened for business, but Plaintiff alleges that the company, as it was outlined in his business model, never materialized.  He alleges that JLG intentionally deviated from the business model and failed to honor its agreement with Plaintiff regarding the creation and operation of JLG ServicePlus.  Paylor eventually asked Plaintiff to renegotiate his deal with JLG, and Plaintiff agreed, but he was terminated one week later.  Plaintiff filed this suit in Texas state court, alleging numerous state law claims and seeking a declaration as to the enforceability of the non-compete covenant in the Employment Agreement.

JLG, a Pennsylvania corporation--joined by Lasky, a Florida resident, and Paylor, a Pennsylvania resident (collectively, "JLG Defendants")--removed the action to this court based on diversity of citizenship.  Plaintiff moves to remand, asserting that JLG ServicePlus has its principal place of business in Houston, Texas, and, therefore, complete diversity does not exist.  After Defendant JLG ServicePlus was served in this action in federal court, it joined the JLG Defendants in opposing the motion to remand, arguing, *inter alia*, that (1) allegedly non-diverse Defendant "ServicePlus, Inc." (as "JLG ServicePlus" was incorrectly named in Plaintiff's Original Petition) "does not exist"; and, in any event, (2) JLG ServicePlus has its principal place of business in Maryland--not Texas--and complete diversity therefore exists.  Also pending are motions to dismiss and/or transfer by the various Defendants, and Plaintiff's motion for leave to amend his complaint.

## II.  Discussion

### A.  Plaintiff's Motion to Remand

#### 1.  Standard of Review

When a plaintiff moves to remand for lack of jurisdiction, the burden of establishing jurisdiction and the propriety of removal rests upon the defendant.  Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995); Dodson v. Spiliada Mar.

<u>Corp</u>., 951 F.2d 40, 42 (5th Cir. 1992).  Any doubt as to the propriety of the removal must be resolved in favor of remand.  *See* <u>Walters v. Grow Group, Inc.</u>, 907 F. Supp. 1030, 1032 (S.D. Tex. 1995).

  2.  <u>Which Petition Controls</u>

    As a threshold matter, the Court must determine which petition controls.  It is undisputed that Plaintiff, in his Original Petition, incorrectly named "ServicePlus, Inc." as a Defendant, when the correct legal name of his former employer was "JLG ServicePlus, Inc." On March 22, 2006, Plaintiff corrected the misnomer by filing his First Amended Original Petition in state court.[1] At that time, a request was made for the district clerk to issue and serve process on the registered agent of JLG ServicePlus.  *See* Document No. 29 ex. A.[2]  Five days later, on March 27, 2006, JLG filed its Notice of Removal with this Court, but attached the Original Petition to its Notice.  Defendants contend that the Original Petition is the

------

    [1] Plaintiff learned of the mistake after attempting to serve "ServicePlus, Inc." with the Original Petition by sending it via certified mail to CT Corporation System, who is the registered agent for JLG ServicePlus.  *See* Document No. 1 ex. 3.  CT Corporation System returned the documents to Plaintiff and informed him by letter that it was "not the registered agent for an entity by the name of Service Plus, Incorporated."  *See* <u>id.</u> ex. 4. Plaintiff promptly filed an amended petition that corrected the name of his former employer and again attempted service.

    [2] JLG ServicePlus's registered agent was served with a copy of Plaintiff's First Amended Original Petition in state court by certified mail on April 5, 2006.  *See* Document No. 29 ex. B.

4

relevant pleading for the jurisdictional inquiry because the amended petition had not been served on any party before removal and, thus, JLG ServicePlus is not properly before the Court.   Plaintiff responds that the First Amended Original Petition, which was filed five days before removal, is the relevant pleading, and JLG ServicePlus's non-diverse citizenship cannot be ignored simply because Defendant had not been served when its co-defendants removed the case.

Generally, "[w]henever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity jurisdiction is determined from the fact of citizenship of the parties named and not from the fact of service." *See* New York Life Ins. Co. v. Deshotel, 142 F.3d 873, 883 (5th Cir. 1998). *See also* Johnson v. Scimed, Inc., 92 F. Supp. 2d 587, 589 (W.D. La. 2000) (same).   In other words, "[a] non-resident defendant cannot remove an action if the citizenship of any co-defendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or non-service upon the co-defendant." *See* Deshotel, 142 F.3d at 883.   Defendants argue that the principle of Deshotel is not controlling here because no defendants were served with the amended petition before removal.   Whether removal is proper is determined "on the basis of claims in the state court complaint as it exists at the time of removal . . ." Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995).   Although complaints that are

amended post-removal cannot divest a federal court of jurisdiction, *see* id., Plaintiff here filed the amended petition in state court five days *before* the notice of removal was filed.   Defendants concede that they have found no authority that directly supports their position, but they submit that the policies of procedural fairness and due process announced in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 119 S. Ct. 1322, 1327 (1999) "weigh in favor a finding that the First Amended Petition is not properly before this Court." *See* Document No. 11 at 2.

In Murphy Bros., 119 S. Ct. 1322, the Supreme Court, in analyzing 28 U.S.C. § 1446(b), held that the receipt of a faxed courtesy copy of a pleading did not trigger the deadline for removal; instead, a defendant must be formally served with process before procedural impositions begin. *See* id. at 1325-27.   The Court noted that this interpretation of § 1446(b) ensures that a defendant's right to removal does not expire before the party is subject to the court's authority, and it "assures defendants adequate time to decide whether to remove an action to federal court." *See* id. at 1328-30.   Here, the Defendants who removed the action were formally served with Plaintiff's Original Petition and were properly subject to the court's authority.   Even if the removing Defendants acted without knowing that the Amended Petition correctly naming the non-diverse Defendant had been filed, they are at most slightly inconvenienced and in no way have they been

6

deprived of basic procedural fairness or due process.   The First Amended Original Petition, properly filed as a matter of right under state law before the case was removed, is the petition that must be considered on the motion to remand.

3.   <u>Principal Place of Business of JLG ServicePlus</u>

JLG ServicePlus argues that if the First Amended Original Petition controls, the motion to remand should nonetheless be denied because JLG ServicePlus is not a Texas citizen, and complete diversity therefore exists.   "[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."   28 U.S.C. § 1332(c)(1).   Plaintiff is a citizen of Texas, and it is undisputed that JLG ServicePlus is incorporated in Delaware.   *See* Document No. 5 ex. 2 ¶ 3.   At issue is the location of JLG ServicePlus's principal place of business at the time the suit was filed and removed.   *See, e.g.,* <u>Coury v. Prot</u>, 85 F.3d 244, 249 (5th Cir. 1996) (existence of diversity jurisdiction is to be determined both at the time the suit was filed and at the time of removal). Determining a corporation's principal place of business is a factual inquiry dependent on a number of factors.   <u>Howery v. Allstate Ins. Co.</u>, 243 F.3d 912, 920 (5th Cir. 2001).   The Fifth Circuit applies a "total activity" test which is "a synthesis of the 'place of activity' and 'nerve center' tests some courts have employed."   <u>Id.</u>

7

(citing <u>J.A. Olson Co. v. City of Winona, Miss.</u>, 818 F.2d 401, 406, 409 (5th Cir. 1987)).   Three general principles guide the inquiry:

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's brain is given greater significance.

<u>Olson</u>, 818 F.2d at 411 (internal citations omitted).   *See also* <u>Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.</u>, 138 F.3d 160, 164 (5th Cir. 1998).

It is undisputed that JLG ServicePlus was in the business of repairing heavy equipment.   *See* Document No. 5 ex. 2 ¶ 22.   JLG ServicePlus submits the sworn affidavit of Joseph A. Dixon ("Dixon"), the President of JLG Equipment Services, Inc. (which he avers to be the successor by merger of JLG ServicePlus).   *See* Document No. 43 ex. A ¶ 1.   Dixon avers that, as of late February and March, 2006--when this case was filed and removed--JLG ServicePlus had two operating divisions, with one more division in the planning stages: (1) the "Mid-Atlantic" division, which operated out of a facility in McConnellsburg, Pennsylvania; (2) the "South-Central" division, which operated out of a facility in Houston, Texas; and (3) the "South Eastern" division, which "was in the planning stages for Atlanta, GA."   *See* <u>id.</u> ¶ 6.   Dixon avers

8

that, in late February and March, 2006, most of JLG ServicePlus's
employees worked in the Mid-Atlantic division, and "a majority of
the JLG ServicePlus, Inc's revenues in 2005, and through the first
quarter of 2006, were procured by the Mid-Atlantic division."
Id. ¶ 7.

Furthermore, Dixon avers that, as of late February and March,
2006, all members of JLG ServicePlus's Board of Directors either
resided in or worked in Hagerstown, Maryland; all but one of JLG
ServicePlus's officers resided in or worked in Hagerstown, Maryland
(and the other officer--Dixon himself--was in the process of moving
his residence to Hagerstown); and the "ultimate management
decisions with regard to JLG ServicePlus, Inc.'s financial, legal,
accounting, marketing, sales and human resources affairs were made
in Hagerstown, MD." *See* id. ¶¶ 2, 4-5.  Dixon further avers that,
between November 9, 2004, and March 27, 2006, "[a]ll five of JLG
ServicePlus, Inc.'s Board of Directors' quarterly meetings
. . . were held in Hagerstown, MD."  Id. ¶ 3.

A corporation is far flung when it has business activities in
different states, such that no location can be denoted as
"principal."  *See* Olson, 818 F.2d at 407 (citing Scot Typewriter
Co. v. Underwood Corp., 170 F. Supp. 862 (S.D.N.Y. 1959)).  Here,
the uncontroverted evidence is that when this suit was filed and
removed, JLG ServicePlus had operating facilities in Pennsylvania

and Texas, and a new facility was being planned for Georgia.[3] Because JLG ServicePlus at the time of filing and removal conducted business in two distant states, neither of which was principal, its operations were far flung, and the "nerve center" test is "more significant in determining principal place of business." *See* Olson, 818 F.2d at 411. After reviewing the record, and the absence of any controverting proof from Plaintiff, the Court finds that JLG ServicePlus's "nerve center," and therefore its principal place of business, was and is located in Hagerstown, Maryland.[4]

---

[3] Plaintiff in his reply submits: (1) an undated press release from the JLG ServicePlus website, which states that "City of Houston officials" attended the grand opening of a new location for "Houston-based ServicePLUS;" and (2) an undated web page which states that Houston, Texas is "home" to JLG ServicePlus's training center. *See* Document No. 46 exs. A & B. These undated submissions do not reflect, as Plaintiff maintains, that JLG ServicePlus "was engaged in active labor intensive operations occurring primarily in Houston at the time of removal." *See* Document No. 46 ¶ 15. Furthermore, Plaintiff argues without supporting evidence that JLG ServicePlus's "only location from July of 2004 through July of 2005 was in Houston," and "there is no evidence that any changes with respect to the business or operations of ServicePlus occurred." Id. ¶¶ 12-13. However, the uncontroverted, verified evidence is that by the time this suit was filed in late February, 2006, JLG ServicePlus conducted operations out of two facilities, and, of these two facilities, the Houston, Texas facility had *fewer* employees and revenues.

[4] Furthermore, even if the Court were to analyze JLG ServicePlus's principal place of business under the "place of activity" prong as Plaintiff requests, the uncontroverted evidence is that: (1) as of late February and March, 2006, a majority of JLG ServicePlus's employees worked in the Mid-Atlantic division located in Pennsylvania; and (2) from 2005, through the first quarter of 2006, a majority of JLG ServicePlus's revenues were procured by that same division. *See* Document No. 43 ¶¶ 6-7. *Cf.* Olson, 818 F.2d at 411-12 (in evaluating the "place of activity," a court should consider, *inter alia*, the "proportion of its income" that a

There is therefore complete diversity of citizenship between Plaintiff and Defendants, and Plaintiff's motion to remand will be denied.

B.    JLG's Motion to Dismiss or Transfer under Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a)

      1.    Standard of Review

JLG moves to dismiss or transfer this action pursuant to Fed. R. Civ. P. 12(b)(3) or 28 U.S.C. § 1406(a), arguing that venue is improper in light of a forum selection clause in Plaintiff's Employment Agreement with JLG.  Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that venue is proper.  Psarros v. Avior Shipping, Inc., 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002); Laserdynamics Inc. v. Acer Am. Corp., 209 F.R.D. 388, 390 (S.D. Tex. 2002).  In the absence of an evidentiary hearing, the plaintiff may bear his burden by presenting facts that, taken as true, establish venue.  See Bigham v. Envirocare of Utah, Inc., 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994)).  A court should, therefore, accept uncontroverted allegations in the plaintiff's complaint as true and resolve factual conflicts in the

---

corporation derives from an activity, and "the number of employees in the given locale").

plaintiff's favor.  *See* id.; McCaskey v. Cont'l Airlines, Inc., 133
F. Supp. 2d 514, 523 (S.D. Tex. 2001).

    2.   Applicability of Forum Selection Clause

    The parties dispute whether Plaintiff's claims are subject to
the Employment Agreement's forum selection clause.  The Fifth
Circuit instructs courts to look  "to the language of the parties'
contracts to determine which causes of action are governed by the
forum selection clause[ ]."  Marinechance Shipping, Ltd. v.
Sebastian, 143 F.3d 216, 222 (5th Cir.), *cert. denied*, 119 S. Ct.
620 (1998).  If the substance of the plaintiff's claims, stripped
of their labels, does not fall within the scope of the forum
selection clause, the clause cannot apply.  Roby v. Corp. of
Lloyd's, 996 F.2d 1353, 1361 (2d Cir.), *cert. denied*, 114 S. Ct.
385 (1993).  Where, as here, a plaintiff makes allegations sounding
in both contract and tort, the court must examine both types of
claims to determine whether they are governed by the forum
selection clause.  *See* Marinechance, 143 F.3d at 221-22.  Although
determining the scope of a forum selection clause is a case-
specific inquiry, other Circuits have articulated "general rules
regarding the circumstances in which a forum selection clause will
apply to tort claims."  Terra Int'l, Inc. v. Miss. Chem. Corp., 119
F.3d 688, 694 (8th Cir.), *cert. denied*, 119 S. Ct. 629 (1997).  In
Terra, the Eighth Circuit reviewed three such tests: (1) whether

the tort claims "ultimately depend on the existence of a contractual relationship" between the parties; (2) whether resolution of the claims "relates to interpretation of the contract"; and (3) whether the claims "involv[e] the same operative facts as a parallel claim for breach of contract." *See* id. at 694-95 (quoting, respectively, Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 104 S. Ct. 349 (1983); Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988); and Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993)). *See also* Int'l Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 115-16 (5th Cir. 1996) (affirming enforcement of forum selection clause "even though [plaintiff] is not technically suing for breach of contract" because "the entire controversy centers around which party's interpretation of the contract is the correct one, and whether [plaintiff] was fraudulently induced to enter into the contract."). In determining the applicability of a forum selection clause, "[e]xamination of the merits of any of the claims or defenses need not be made," and the Court should take the allegations in the complaint as true and resolve factual conflicts in the documentary submissions in favor of the plaintiff. Smith v. Lucent Techs., Inc., No. 02-0481, 2004 WL 515769, at *9, *11 (E.D. La. Mar. 16, 2004) (quoting Farmland Indus., Inc. v. Fazier-Parrott Commodities, Inc., 806 F.2d 848, 850

(8th Cir. 1986), *abrogated on other grounds by* <u>Lauro Lines v.</u>
<u>Chasser, et al.</u>, 109 S. Ct. 1976 (1989)).

Here, the forum selection clause is contained in an Employment
Agreement between Plaintiff and JLG that delineates the terms of
JLG's offer to employ Plaintiff as President of its newly-formed
subsidiary, JLG ServicePlus.   The clause provides that "[t]his
letter agreement is governed by and is to be construed and enforced
in connection with the laws of the Commonwealth of Pennsylvania and
*any action commenced hereunder must be brought in a court located*
*in the such Commonwealth*."   *See* Document No. 13 ex. B at 6
(emphasis added).   Plaintiff asserts the following claims against
JLG:  breach of partnership agreement and partnership duties;
misappropriation and theft of trade secrets;  breach of oral
contract;  fraudulent inducement to oral contract and fraudulent
misrepresentation;  fraudulent non-disclosure;  constructive fraud
and defalcation;  and negligent misrepresentation.   *See* Document No.
5 ex. 2.[5]  Plaintiff contends that these claims "do not fall within

_____

[5]  Plaintiff also seeks declaratory relief as to the
enforceability of the non-compete covenant in the Employment
Agreement, which provides that Plaintiff will not "directly or
indirectly engage in or assist any activity which is competitive
with the business of the Company o[r] JLG . . . ."  *See* Document No.
5 ex. 2 ¶ 53.  Plaintiff concedes that this claim "fall[s] within
the scope of the forum selection clause," but Plaintiff argues that
the claim should be tried in Texas because "[t]he application of
another state's law to determine the enforceability of the
restrictive covenants with respect to a Texas resident violates a
stated fundamental Texas public policy."  *See* Document No. 16 at
11-12; Document No. 23 at 7.  However, JLG and JLG ServicePlus
recently filed a Stipulation in which they release, discharge, and

the narrow language of the forum selection clause as his claims are unrelated to his employment or the [Employment] Agreement" and "do not require an examination or consideration of the Agreement for resolution."

The forum selection clause--which applies to "any action commenced hereunder"--is "not worded as broadly as some forum selection clauses." Imation v. Quantum Corp., No. 01-1798, 2002 WL 385550, at *4 (D. Minn. Mar. 8, 2002), citing Farmland Indus., 806 F.2d at 849, 852 (clause applied to "any judicial action . . . arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby or otherwise arising in connection with the relationship between the parties . . ."); Stewart Org., Inc. v. Ricoh Corp., 108 S. Ct. 2239, 2241 n.1 (1988) (clause applied to "any case or controversy arising under or in connection with this Agreement . . ."). See also Terra, 119 F.3d at 694 (noting that the word "hereunder" in a forum selection clause typically "refers to the relations that have arisen as a result of this contract.") (quoting Picken v. Minuteman Press Int'l, Inc., 854 F. Supp. 909 (N.D. Ga. 1993)). The crux of Plaintiff's complaint is that he entered into

---

disclaim any interest in enforcing the non-compete covenant or limiting Plaintiff's right to work in the service industry, and agree that their Stipulation may be pled as an absolute and final bar to any attempt by them to seek enforcement of the non-compete covenants or to limit Plaintiff's right to work in the service industry. See Document No. 41 at 1-2. Plaintiff's requested declaratory relief has been rendered moot.

an oral partnership agreement with JLG to implement Plaintiff's confidential business model for the creation and operation of a service company, JLG ServicePlus.   Plaintiff alleges that JLG breached the partnership agreement and its partnership duties when it, among other things, failed to provide promised sales support and reconditioning work to JLG ServicePlus and intentionally diverted "approximately $75 million dollars in revenue from ServicePlus" (which reduced the value of Plaintiff's ownership interest in JLG ServicePlus).   *See* Document No. 5 ex. 2 at 6-7. Plaintiff also alleges that JLG, Lasky, and Paylor made fraudulent misrepresentations to induce Plaintiff to enter into the partnership agreement, and he alleges that JLG misappropriated his confidential information, in part, by misrepresenting an intent to implement the business model as written and to share with Plaintiff the profits generated by the confidential information.   *See* <u>id.</u> at 6, 10-15.

Plaintiff correctly argues that his claims and factual allegations arise from his alleged partnership agreement with JLG, not from an alleged breach of the Employment Agreement.   Plaintiff does not contend that any party breached its duties or obligations under the Employment Agreement,[6] and Plaintiff's fraud claims--

---

[6]   Under the Employment Agreement, JLG agreed to pay Plaintiff's salary and benefits, to have three or four JLG officers serve on JLG ServicePlus's board of directors, and to supervise Plaintiff's performance.   Plaintiff does not contend that JLG breached these or other obligations under the Employment Agreement.

which are based on representations by JLG, Lasky, and Paylor made
between September, 2003, and February, 2004, concerning the
formation of a partnership agreement with JLG--are broader than and
precede the execution of the Employment Agreement between JLG and
Plaintiff, which was executed in late March, 2004.[7]  Under the
three tests discussed in <u>Terra</u>, Plaintiff's claims, which
principally arise from an alleged breach of the partnership
agreement, do not "ultimately depend" on the existence of an
Employment Agreement; the claims do not require an interpretation
of the Employment Agreement; and the resolution of the claims does
not involve the "same operative facts" as a parallel claim for
breach of contract of the Employment Agreement.  *See* <u>Terra</u>, 119
F.3d at 692; *see also* <u>Int'l Software</u>, 77 F.3d at 115-16
(considering whether plaintiff's claims required an interpretation

---

[7] Plaintiff pleads that he "reserves the right to seek
rescission of the Employment Agreement" for his fraud claims.
However, Plaintiff's fraud claims--which stem from representations
by JLG, Lasky, and Paylor regarding the formation of the earlier,
separate *partnership* agreement--are broader than the Employment
Agreement's forum selection clause, which applies only to
"action[s] commenced hereunder." *See, e.g.,* <u>Armco Inc. v. N. Atl.
Ins. Co. Ltd.</u>, 68 F. Supp. 2d 330, 338-40 (S.D.N.Y. 1999)
(declining to apply forum selection clause where plaintiff's claims
arose from "numerous pre-contract activities" and fraud in the
negotiation of the contract itself); <u>Anselmo v. Univision Group,
Inc.</u>, No. 92 Civ. 1471, 1993 WL 17173, at *3 (S.D.N.Y. Jan. 15,
1993) ("Courts in other jurisdictions have refused to dismiss or
transfer a case which is broader than the forum selection clause,"
especially where the cases involved "additional defendants not
bound by the forum selection clause and . . . state law fraud
claims which if successful would invalidate the contract containing
the clause.").

of the contract and whether the controversy "center[ed] around" the contract containing a forum selection clause).  By its own terms, the Employment Agreement's forum selection clause applies only to "action[s] commenced hereunder," and, as such, it was not intended to govern disputes commenced under earlier, separate agreements, such as the alleged partnership agreement that forms the basis of Plaintiff's complaint.  *See, e.g.,* <u>Anselmo</u>, 1993 WL 17173, at *2 ("[T]he forum selection clause by its terms applies only to litigation relating to 'this Agreement,' so it was not intended to govern disputes arising under the terms of earlier contracts or agreements").[8]  In sum, Plaintiff's claims are broader than the Employment Agreement's forum selection clause, which is limited to

---

[8] JLG argues that the forum selection clause is made broader by an integration clause in the Employment Agreement, which states that "[t]his letter agreement . . . embodies our entire understanding . . . *relating to this [employment] offer*."  *See* Document No. 5 ex. 2 at 1, 6.  However, the alleged partnership agreement at the core of Plaintiff's complaint does not "relat[e] to" Plaintiff's employment offer or his employment with JLG ServicePlus, and the partnership agreement and employment agreement cover different subject matters.  *See* <u>Smith</u>, 2004 WL 515769, at *16 (integration clause--which "merg[ed] and supersede[d] 'all prior . . . agreements'"--did not "convert[ ] *any* breach of contract claim between the parties into a breach of contract claim with respect to the 2000 Agreement" because a merger clause only incorporates prior dealings between the parties "relating to the subject matter of the contract containing the merger clause.") (quoting <u>Int'l Talent Grp., Inc. v. Copyright Mgmt., Inc.</u>, 629 F. Supp. 587, 592 (S.D.N.Y. 1986); *see also* <u>Fish v. Tandy Corp</u>., 948 S.W.2d 886, 899-900 (Tex. App.--Fort Worth 1997, writ denied) ("[B]efore one contract is merged into another, the last contract must be between the *same* parties as the first, must embrace the *same* subject matter, and must have been so intended by the parties.") (emphases in original).

"action[s] commenced hereunder," and JLG's motion to dismiss for improper venue based on the forum selection clause is denied.

C.    JLG's Motion to Transfer under 28 U.S.C. § 1404(a)

JLG moves to transfer this action to the Middle District of Pennsylvania, Harrisburg Division, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) allows district courts to transfer an action to another proper venue "[f]or the convenience of parties and witnesses" if such a transfer will be "in the interest of justice." 28 U.S.C. § 1404(a) (2006).  The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  DataTreasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003) (citations omitted).  The decision to transfer a pending case is committed to the sound discretion of the district court.  Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528 (5th Cir. 1988).  In exercising this discretion, "the trial court must consider 'all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure [hereinafter "Wright"], § 3847 at 370

19

(1986)).  "The party moving for a change of venue bears the burden of demonstrating why the forum should change."  Goodman Co., L.P. v. A & H Supply, Inc., 396 F. Supp. 2d 766, 775 (S.D. Tex. 2005); see also Peteet, 868 F.2d at 1436.  "A plaintiff's choice of forum is entitled to some deference and generally should not be disturbed unless the balance of factors strongly favors the moving party."  Goodman, 396 F. Supp. 2d at 776 (quoting Toshiba Corp. v. Hynix Semiconductor, Inc., No. 04-2391, 2005 WL 2415960, at *2 (N.D. Tex. Sept. 30, 2005)).

Whether to transfer a case under Section 1404(a) "turns on a number of private and public interest factors, none of which are given dispositive weight."  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).  These concerns include: (1) the availability and convenience of the witnesses and parties; (2) the availability of process to compel the presence of unwilling witnesses; (3) the cost of obtaining attendance of witnesses; (4) the plaintiff's choice of forum; (5) the relative ease of access to sources of proof; (6) where the events took place; (7) administrative difficulties flowing from court congestion; (8) the familiarity of the forum with the law that will govern the case; (9) the avoidance of unnecessary problems of conflict of laws of the application of foreign law; (10) judicial economy; (11) the possibility of delay and prejudice if transfer is granted; and (12) the interest of justice in general.  See id.; DataTreasury, 243 F. Supp. 2d at 593;

<u>Goodman</u>, 396 F. Supp. 2d at 776; <u>Republic of Bolivia v. Philip Morris Cos., Inc.</u>, 39 F. Supp. 2d 1008, 1009-10 (S.D. Tex. 1999); <u>Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.</u>, 844 F. Supp. 1163, 1165 (S.D. Tex. 1994). "A court may consider a wide range of circumstances in evaluating the facts involved in each case." <u>Goodman</u>, 396 F. Supp. 2d at 776.

JLG's motion to transfer largely focuses on the forum selection clause, which the Court has determined does not govern Plaintiff's claims. JLG argues that, notwithstanding the effect of the forum selection clause, transfer is warranted because (1) the convenience of the parties and witnesses is best served by transfer to Pennsylvania; (2) none of the alleged representations giving rise to Plaintiff's claims occurred in Texas; (3) the parties' claims under the Employment Agreement are governed by Pennsylvania law; and (4) an adverse judgment will be more easily enforced in Pennsylvania.

## 1.   <u>Availability and Convenience of Witnesses and Parties</u>

JLG argues that litigating this case in Pennsylvania will be more convenient for the Defendants, who reside or work in Pennsylvania or Maryland; however, "[a] case should not be transferred if the 'only practical effect is to shift inconvenience from the moving party to the nonmoving party.'" <u>Goodman</u>, 396 F. Supp. 2d at 776 (quoting <u>The CIT Group/Commercial Servs., Inc. v.</u>

Romansa Apparel, Inc., No. 02-1954, 2003 WL 169208, at *4 (N.D. Tex. Jan. 21, 2003)).   JLG contends that it believes that Plaintiff's claims "can be disposed of as a matter of law" and without parol evidence, "based upon the statute of frauds, the doctrine of ratification, and the clear and unambiguous terms of the Employment Agreement." *See* Document No. 13 at 13.   If JLG is correct and the case can be disposed as a matter of law without parol evidence, then the convenience of key witnesses who may testify at trial merits less significance than in a typical Section 1404(a) analysis.   However, JLG argues that if parol evidence *is* admitted, most of the key witnesses who will testify about Plaintiff's claims and the formation of an employment relationship between Plaintiff and JLG "either live and/or work in the Middle District of Pennsylvania or live and/or work in Hagerstown, Maryland."   *See* id.   JLG does not state who are the "key witnesses," but attaches as an exhibit its "Rule 26 Initial Disclosures," which lists twelve individuals who "may have knowledge of Plaintiff's claims and/or Defendants' defenses." *See* id. ex. E at 1.   JLG does not state whether it intends to call any of these individuals as witnesses, nor does JLG describe the substance or relevance of their potential testimony.   *See* LeBouef v. Gulf Operators, Inc., 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) ("The moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently

22

located.   Instead, the movant must specifically identify the key witnesses and outline their testimony."); <u>Goodman</u>, 396 F. Supp. 2d at 776 (same).[9]  Furthermore, some of the listed individuals appear to be JLG employees.  *See* <u>Cont'l Airlines, Inc. v. Am. Airlines, Inc.</u>, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992) (witnesses who are employees of a party seeking transfer are "entitled to less weight because that party will be able to compel their testimony at trial.").  JLG has not met its burden on this factor.  *See* <u>Goodman</u>, 396 F. Supp. 2d at 776.

2.   <u>Place of the Alleged Wrong</u>

Plaintiff alleges two primary "wrongs" in this case: (1) fraudulent misrepresentations by JLG, Lasky, and Paylor to induce Plaintiff to enter into a partnership agreement with JLG; and (2) JLG's breach of the partnership agreement and partnership duties.  The alleged misrepresentations arose during negotiations between Plaintiff and the JLG Defendants that occurred between September, 2003, and February, 2004.  *See* Document No. 5 ex. 2 ¶¶ 12-19.  JLG submits affidavits from Lasky and Paylor, who aver that "[n]one of the meetings and communications" that allegedly

---

[9]  The Rule 26 disclosures provide only innocuous general information such as, "Mr. Brower has knowledge concerning the events leading up to Plaintiff's execution of the Employment Agreement dated March 24, 2004 and various meetings and communications between the parties." *See* Document No. 13 ex. E at 1.

gave rise to the fraudulent misrepresentation claims occurred in Texas. *See* Document No. 13 ex. C ¶ 18; ex. D ¶ 18. However, neither party states *where* these alleged communications took place--whether in Pennsylvania or elsewhere. Plaintiff argues that the second wrong occurred in Houston, Texas because Plaintiff and JLG ServicePlus were residents of Houston at the time of JLG's alleged breach of the partnership agreement, and "[t]he support and business promised to ServicePlus by JLG would have manifested in Houston, Texas." *See* Document No. 16 at 15. On balance this factor does not weigh in favor of transfer.

3.   <u>Other Factors</u>

JLG also argues that transfer is warranted because the Employment Agreement contains a choice of law provision stating that it is to be "governed by and . . . construed and enforced in connection with the laws of the Commonwealth of Pennsylvania . . ." However, Plaintiff alleges only one claim under the Employment Agreement--a claim for declaratory relief as to the enforceability of the non-compete covenant--and this requested declaratory relief has been obviated by JLG's stipulation that it forever releases and disclaims any interest in enforcing the non-compete covenant or limiting Plaintiff's right to serve in the service industry. *See* Note 5, <u>supra</u>, at 14-15. The remainder of Plaintiff's claims are pled under Texas law, which weighs in favor of adjudication in this

24

forum rather than in Pennsylvania.   JLG also contends that any judgment obtained by Plaintiff will be easier to enforce in Pennsylvania because JLG is a Pennsylvania corporation.   However, "[t]his argument ignores the fact that a Texas judgment should be honored by [a Pennsylvania] court." *See* Goodman, 396 F. Supp. 2d at 777; *see also* U.S. CONST. art. IV, § 1 (Full Faith & Credit Clause).   The Court has considered the other factors--such as the deference usually accorded to a plaintiff's choice of forum, the risk of delay and prejudice, and the fact that this case does not appear to be document-intensive--and these factors are either neutral or weigh against transfer.   As such, JLG has not satisfied its burden of demonstrating that the balance of factors favors transfer, and the motion to transfer will be denied.

D.   <u>Lasky and Paylor's Motion to Dismiss for Lack of Personal Jurisdiction</u>

1.   <u>Standard of Review for Personal Jurisdiction</u>

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.   *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend

as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

Due process requirements for exercising personal jurisdiction over a nonresident have been defined by the United States Supreme Court in a familiar body of case law. Stuart v. Spademan, 772 F.2d 1185, 1189 (5th Cir. 1985). The due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). "A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [the defendant] should reasonably anticipate being haled into court there.'" Nuovo Pignone, SpA v. Storman Asia M/V, 310 F.3d 374, 379 (5th Cir. 2002) (quoting Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2183 (1985)). "There must be some act whereby the [nonresident] defendant 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Id.

Two types of personal jurisdiction are recognized: (1) specific; and (2) general. Plaintiff does not contend that there is general jurisdiction over Lasky and Paylor in Texas, so only specific jurisdiction is implicated. Specific jurisdiction

exists when the cause of action relates to or arises out of the defendant's contacts with the forum. *See* <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 104 S. Ct. 1868, 1872 n. 8 (1984); *see also* <u>Panda Brandywine Corp. v. Potomac Elec. Power Co.</u>, 253 F.3d 865, 868 (5th Cir. 2001) (specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.") (quoting <u>Burger King Corp. v. Rudzewicz</u>, 105 S. Ct. 2174, 2182 (1985) (internal quotations omitted). "[T]he 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." <u>Bearry v. Beech Aircraft Corp.</u>, 818 F.2d 370, 374 (5th Cir. 1987) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 100 S. Ct. 559, 567-68 (1980)). "The contacts with the forum State must be such that it is foreseeable that the defendant 'should reasonably anticipate being haled into court there.'" <u>Electrosource</u>, 176 F.3d at 872 (quoting <u>World-Wide Volkswagen</u>, 100 S. Ct. at 567). "Even where a [nonresident] defendant has no physical presence in the forum state, a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." <u>Nuovo Pignone</u>, 310 F.3d at 379. *See* <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 419 (5th Cir. 1993). When the

27

issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation. *See* <u>Helicopteros</u>, 104 S. Ct. at 1872.

When an evidentiary hearing on the question of jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a *prima facie* case of personal jurisdiction. <u>Wien Air Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 211 (5th Cir. 1999). The court may decide the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985); <u>Stuart</u>, 772 F.2d at 1192. Proof by a preponderance of the evidence is not required. <u>Kelly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir. 2000). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. <u>Alpine View Co. Ltd. v. Atlas Copco AB</u>, 205 F.3d 208, 215 (5th Cir. 2000).

2.    <u>Analysis of Individual Defendants' Personal Jurisdiction</u>

Lasky and Paylor (the "Individual Defendants") argue that they are not subject to personal jurisdiction in Texas because, *inter alia*, (1) Plaintiff does not allege jurisdictional facts that

support personal jurisdiction over them; and (2) the fraudulent inducement to contract and fraudulent misrepresentation claims asserted against them do not arise out of their contacts with Texas. Plaintiff responds that the Individual Defendants purpose-fully directed activities toward Texas, and, "[a]t a minimum, Defendants directed their activities toward a resident of Texas and this litigation results from the injuries caused by those activities." *See* Document No. 22 at 3; Document No. 17 at 12.

Plaintiff, as the party seeking to establish jurisdiction, bears the burden of presenting a *prima facie* case of personal jurisdiction. *See* <u>Wien</u>, 195 F.3d at 211. *See also* <u>Caldwell v. Palmetto State Sav. Bank of S. Car.</u>, 811 F.2d 916, 917 (5th Cir. 1987) ("[P]laintiff has the burden of making a prima facie case by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants."). To establish a *prima facie* case, the plaintiff must demonstrate "the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." <u>Panda</u>, 253 F.3d at 868. However, "the prima-facie case requirement does not require the court to credit conclusory allegations, even if uncontroverted." <u>Id.</u> at 869. Here, Plaintiff's sole evidence is the unverified state court petition. Defendant argues that the petition lacks jurisdictional allegations to support a *prima facie*

case of specific jurisdiction based on the Individual Defendants'
alleged misrepresentations and fraudulent inducement.

Plaintiff alleges in his petition that the Individual
Defendants fraudulently induced Plaintiff to enter into a
partnership agreement with JLG by misrepresenting to Plaintiff
"that he would own an operate a company pursuant to his business
model fully supported by JLG." *See* Document No. 5 ex. 2 at 11-12.
Plaintiff does not allege that any tortious conduct occurred in
Texas, was purposefully directed toward Texas, or had a foreseeable
effect in Texas. *Cf.* <u>Wien Air</u>, 195 F.3d at 212 (holding that
tortious actions performed outside of Texas may be sufficient, for
purposes of minimum-contacts analysis, if the actions "had
foreseeable effects in the forum and were directed at the forum.").
For instance, Plaintiff does not allege that the Individual
Defendants made misrepresentations to Plaintiff in Texas or during
communications with Plaintiff or JLG ServicePlus in Texas. *See*
<u>Delta Brands Inc. v. Danieli Corp.</u>, 99 Fed. Appx. 1, 5-6 (5th Cir.
May 5, 2004) (per curium) (unpublished) (no *prima facie* case of
specific jurisdiction based on defendant's alleged misrepre-
sentations where plaintiff did not allege that defendant made
misrepresentations in Texas or during communications with
plaintiff's personnel in Texas).[10]  Furthermore, "[a]bsent evidence

_____

[10]  Plaintiff in his unverified response to the motion to
dismiss asserts that the Individual Defendants "intended for
[Plaintiff] to open and operate a *Texas* company based on their

30

regarding what activity or communication [the Individual Defendants] directed toward Texas that fraudulently induced [Plaintiff] to enter [the partnership agreement with JLG], there is no prima facie case for specific jurisdiction on this tort."  *See* D&S Turbine Int'l v. Research Mgmt. Sys., L.C., No. H-05-2158, 2006 WL 287971, at *9 (S.D. Tex. Feb. 6, 2006) (Lake, J.) (no *prima facie* case of specific jurisdiction).  Plaintiff has failed to establish a *prima facie* case of specific jurisdiction based on the Individual Defendants' alleged misrepresentations and/or fraudulent inducement.  *See* id.; Delta Brands, 99 Fed. Appx. at 6; Panda, 253 F.3d at 869 (no *prima facie* case where sole evidence was

---

representations." *See* Document No. 17 at 8 (emphasis added). However, Plaintiff does not allege in his petition that the representations were related to or directed toward Texas or contemplated the establishment of a *Texas* corporate entity, nor has Plaintiff produced any *evidence* that the Individual Defendants engaged in tortious conduct that was purposefully directed toward Texas. *See, e.g.,* Advanced Software, Inc. v. Datapharm, Inc., No. CV 98-5943 DDP, 1998 WL 35151366, at *1 (C.D. Cal. Nov. 6, 1998) ("[B]riefs are not sources of evidence that a court can properly consider on a motion to dismiss for lack of personal jurisdiction."); Hartford Fire Ins. Co. v. Hutchinson, No. H-05-2078, 2006 WL 903715, at *2 (S.D. Tex. Apr. 6, 2006) ("A plaintiff may present a prima facie case by producing *admissible* evidence which, if believed, would suffice to establish the existence of personal jurisdiction.") (emphasis added).  Even if the Court were to construe Plaintiff's petition as alleging that it was foreseeable to the Individual Defendants that the effects of their representations would be felt by Plaintiff in Texas, Plaintiff's *prima facie* case would still fail because "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of *specific acts* toward the forum." *See* Wien Air, 195 F.3d at 212 (emphasis added). *See also* Allred v. Moore & Peterson, 117 F.3d 278, 286 (5th Cir. 1997) ("[T]he effects test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state.").

plaintiffs' state court petition that conclusorily alleged "on information and belief" that defendant knew plaintiffs were Texas residents and that defendant's actions "would intentionally cause harm to [plaintiffs] in Texas.").

Moreover, the Individual Defendants submit affidavits which, they assert, "controvert[ ] any allegation that they engaged in conduct in Texas which gave rise" to Plaintiff's claims.  *See* Document No. 19 at 5.  The Individual Defendants aver in their affidavits that "[n]one of the meetings and communications" that gave rise to Plaintiff's fraud claims "took place in Texas."  *See* Document No. 14 ex. C ¶ 18 & ex. D ¶ 18.  The uncontroverted evidence reflects that during the negotiation period leading up to the execution of the Employment Agreement, Paylor was a resident of Pennsylvania; Lasky was a resident of Florida who lived and worked in Maryland; and Plaintiff was evidently a resident of Arizona--not Texas.  *See* <u>id.</u> ex. A at 1 (consulting agreement between JLG and Plaintiff signed in November, 2003, which provides that Plaintiff is a resident of "28558 N. 95th Place, Scottsdale, AZ 85262"); ex. D ¶ 20 (Paylor's affidavit, in which he avers that "[t]o the best of my knowledge, throughout the negotiations leading up to the March 24, 2004 Employment Agreement," Plaintiff was "living in Arizona.").[11]  Plaintiff does not allege or present evidence that

---

[11] Plaintiff in his response concedes that, "[i]t is true that not all of the representations made by Defendants to [Plaintiff] were made when [Plaintiff] was a resident of Texas."  *See* Document No. 17 at 8.  Plaintiff does not allege or present evidence of *any*

the allegedly tortious activities performed outside of Texas and involving nonresidents of Texas "had foreseeable effects in [Texas] and were directed at [Texas]," *cf.* <u>Wien Air</u>, 195 F.3d at 212, or that the Individual Defendants otherwise purposefully availed themselves of the privilege of conducting business within Texas or invoked the benefits and protections of Texas's laws. *See* <u>Panda</u>, 253 F.3d at 869; <u>Delta Brands</u>, 99 Fed. Appx. at 6. *See also* <u>E2M Health Servs. v. Curative Health Servs.</u>, No. 302CV1562K, 2003 WL 23017509, at *4-5 (N.D. Tex. Dec. 19, 2003) (no specific jurisdiction where Plaintiff "failed to produce evidence which shows that [Defendant] has directed tortious activity towards Texas which has given rise to the [tort] claims at issue in this case."). As such, Plaintiff has failed to establish that the Individual Defendants had minimum contacts with the State of Texas sufficient to subject them to specific jurisdiction, and Plaintiff neither alleges nor presents evidence that the Individual Defendants had the type of continuous and systematic presence in Texas necessary to support general jurisdiction.

---

representations made while Plaintiff *was* a resident of Texas, and Plaintiff submits no evidence to support his argument that, "[a]t a minimum, Defendants directed their activities toward a resident of Texas . . ." *See* Document No. 22 at 3.

E.   JLG ServicePlus's Motion to Dismiss and Plaintiff's Motion
     for Leave to Amend

     JLG ServicePlus moves to dismiss Plaintiff's claims against it
for untimely service pursuant to Fed. R. Civ. P. 4(m), arguing that
Plaintiff effected service more than 120 days after removal, and
Plaintiff has not shown good cause for the delay.   The Court
granted Plaintiff leave to serve JLG ServicePlus at the Scheduling
Conference on September 22, 2006, and Plaintiff completed service
on October 17, 2006.   *See* Document No. 35 ex. A-1 at 1-3.   It is
undisputed that JLG ServicePlus has now been properly served.   JLG
ServicePlus's motion to dismiss for improper service under Fed. R.
Civ. P. 4(m) will therefore be denied.

     JLG ServicePlus further moves to dismiss pursuant to Fed. R.
Civ. P. 12(b)(6), arguing that Plaintiff has failed to state a
justiciable declaratory judgment claim against JLG ServicePlus.
Plaintiff responds that he has alleged "a viable claim against
ServicePlus with respect to the enforceability of the non-compete
covenants in his Employment Agreement;" however, should additional
information be useful, Plaintiff moves for leave to file his Second
Amended Original Complaint pursuant to Fed. R. Civ. P. 15(a).   The
amended complaint, which Plaintiff attaches to his motion, expands
Plaintiff's allegations against JLG ServicePlus and clarifies that
Plaintiff seeks declaratory relief as to the enforceability of the
non-compete covenant and "to clarify the legal relationship between

34

[Plaintiff], ServicePlus and JLG and [Plaintiff]'s right to work in the service industry." *See* Document No. 35 ex. A-2 ¶¶ 54-59.   In response, JLG ServicePlus has filed a Stipulation in which it releases, discharges, and forever disclaims any interest in enforcing the non-compete covenant or limiting Plaintiff's right to serve in the service industry, and expressly agrees that the Stipulation may be pled by Plaintiff as an absolute and final bar to any attempt by it to seek enforcement of the non-compete covenants or to limit Plaintiff's right to work in the service industry. *See* Document No. 41 at 1-2. JLG ServicePlus argues that "any issue involving the enforceability of the restrictive covenants in the Employment Agreement, if it ever was ripe, is rendered moot by the Stipulation," and the Court should therefore (1) deny Plaintiff's motion for leave to amend because "any amendment would be futile" in light of the stipulation; and (2) grant JLG ServicePlus's motion to dismiss because any claim that Plaintiff may have against JLG ServicePlus has been rendered moot by its stipulation as to the relief requested by Plaintiff. *See* Document No. 40 at 10-11 (quoting <u>Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.</u>, 933 F.2d 314, 321 (5th Cir. 1991) ("We also affirm denials of motions to amend when amendment would be futile.")).   Plaintiff has not responded to JLG ServicePlus's argument that the stipulation renders moot Plaintiff's claims against JLG ServicePlus. JLG ServicePlus has conceded to Plaintiff

35

all relief sought by Plaintiff against this Defendant in both the First Amended Original Petition and the proposed Second Amended Original Complaint.  No case or controversy remains against JLG ServicePlus. *See* Goldin v. Bartholow, 166 F.3d 710, 716 n.7 (5th Cir. 1999) ("A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation.  A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.") (internal citation omitted); First Colony Life Ins. Co. v. LFC Resolution Payment Fund, Ltd., 83 F. Supp. 2d 767, 769 (N.D. Tex. 1999) ("If the issues presented have been resolved, then a suit presents no 'case or controversy' and should be dismissed as moot."), *citing*, Flast v. Cohen, 88 S. Ct. 1942, 1950 (1968) ("[N]o justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments").  Plaintiff's Motion for Leave to Amend will be denied as futile, and JLG ServicePlus's Motion to Dismiss will be granted.

### III.  Order

For the foregoing reasons, it is

ORDERED that Plaintiff's Motion to Remand (Document No. 8) is DENIED, and his Motion for Leave to Amend (Document No. 35) is DENIED as futile.  It is further

36

ORDERED that Defendant JLG Industries, Inc.'s Motion to Dismiss Or, In the Alternative, Motion to Transfer Venue (Document No. 13) is DENIED; Defendants William M. Lasky's and Craig Paylor's Motion to Dismiss (Document No. 14) is GRANTED, and Defendants Lasky and Paylor are DISMISSED without prejudice for lack of jurisdiction; and Defendant JLG ServicePlus, Inc.'s Motion to Dismiss (Document No. 32) is GRANTED, and Plaintiff's claim and case against JLG ServicePlus is DISMISSED.

Plaintiff's case against Defendant JLG Industries, Inc. remains for trial.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, this 29th day of January, 2007.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE